# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

JUSTIN HARLOW, as personal representative )
of the estate of SONDRA CUNNINGHAM, )
                                        )
          Plaintiff, )
                                        )
v. )     Case No. CIV-15-1313-D
                                        )
GOLDEN RULE INSURANCE )
COMPANY administered by THE STATE )
OF LIFE INSURANCE COMPANY, )
                                        )
          Defendant. )

## ORDER

Before the Court is Defendant Golden Rule Insurance Company's ("Golden Rule")
Motion for Summary Judgment [Doc. No. 54], filed pursuant to FED. R. CIV. P. 56.
Plaintiff responded in opposition [Doc. No. 55], and Golden Rule replied [Doc. No. 56].
The matter is fully briefed and at issue.

## BACKGROUND

In 2001, Sondra Cunningham and her husband purchased a term life insurance
policy on Ms. Cunningham's life through Golden Rule.  The policy contained a suicide
clause, limiting the proceeds to the amount of premiums paid by the insured if the insured
took her own life within two years of the policy date.  The suicide clause also addressed
what would occur in the event the policy was reinstated.

In 2009, following the death of her husband, Ms. Cunningham allowed the policy
to lapse.  After undergoing additional medical underwriting, Ms. Cunningham's policy was
reinstated in January 2010.  On February 10, 2010, Ms. Cunningham committed suicide.

Plaintiff, as personal representative of Cunningham's estate, made a claim against the policy. Citing the suicide provision, Golden Rule denied the death benefit and sent the estate a check for premiums paid since the reinstatement of the policy. Golden Rule asserts that the two-year suicide clause re-set after Cunningham reinstated her policy.

Plaintiff's sole remaining claim is for breach of contract.[1] Golden Rule moves for summary judgment on two grounds. First, Golden Rule asserts there was no breach of contract because the policy limited recovery to the premiums paid after reinstatement since Cunningham committed suicide within two years of reinstating the policy. Golden Rule raises the alternative defense that the policy was void since Ms. Cunningham made material misrepresentations on her reinstatement form that caused Golden Rule to reinstate the lapsed policy.[2]

Plaintiff asserts that reinstatement did not revive the suicide clause. Alternatively, Plaintiff contends the policy language is ambiguous. Plaintiff also argues in the alternative that the original policy and reinstated policy are sufficiently different so as to constitute a new policy based on the reinstatement language.

---

[1] On January 26, 2016, Plaintiff, as personal representative of Sondra Cunningham's estate, filed an Amended Complaint asserting claims for breach of contract and insurer's bad faith against all Defendants. [Doc. No. 10]. On December 14, 2016, the Court dismissed the claims against OneAmerica Securities, Inc., and OneAmerica Financial Partners, Inc., but allowed the claims to proceed against Golden Rule. [Doc. No. 20]. Plaintiff stipulated to the dismissal of his bad faith claim without prejudice on July 13, 2017. [Doc. No. 43]. Thus, the sole remaining claim is for breach of contract against Golden Rule.

[2] Because the Court concludes summary judgment is appropriate in favor of Golden Rule on Plaintiff's breach of contract claim, it is not necessary to address Golden Rule's alternative defense that the subject policy was void because Ms. Cunningham allegedly made material misrepresentations in her reinstatement application.

## STANDARD OF DECISION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017) (*quoting* FED. R. CIV. P. 56(a)). A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). At the summary judgment stage, the Court views the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Williams v. FedEx Corporate Services*, 849 F.3d 889, 896 (10th Cir. 2017).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-671 (10th Cir. 1998) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant meets that burden, the nonmovant must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671; *see also* FED. R. CIV. P. 56(c)(1)(A). To accomplish this, the nonmovant must identify facts by reference to the pleadings, depositions, other discovery materials, exhibits or affidavits. *Id.* The Court is not limited to the cited materials, but rather may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court's inquiry is whether the facts and evidence of record present "a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-252 (1986). Unsupported conclusory allegations are not sufficient to defeat summary judgment. *Matthiesen v. Banc One Mortgage Corp*., 173 F.3d 1242, 1247 (10th Cir. 1999).

## UNDISPUTED AND MATERIAL FACTS

On July 9, 2001, Ms. Cunningham applied for a term life insurance policy through Golden Rule. Following review of Ms. Cunningham's application, Golden Rule issued a term life insurance policy on Ms. Cunningham's life for $200,000.00. The effective date of the policy was August 8, 2001.

The policy[3] contained a suicide clause, which provided as follows:

### If the Insured Takes His or Her Own Life

If the *insured* takes his or her own life, while sane or insane, within two years of the *policy* date, we will limit the *proceeds* to the amount of the premium you paid.

If this *policy* is reinstated, this subsection will be measured from the reinstatement date.

[Doc. No. 54-4 at 18] (emphasis in original). Ms. Cunningham's policy with Golden Rule lapsed on August 8, 2009.

---

[3] Plaintiff disputes which "policy" was in effect at the time of Ms. Cunningham's death. Such dispute is immaterial because Georgia courts adhere to the rule that reinstatement revives the old policy, and the new policy is merely a continuation of the old coverage. *Mayes v. Washington Nat'l Ins. Co*., 49 S.E.2d 123, 126 (Ga. Ct. App. 1948); *Dunn v. Royal Maccabees Life Ins. Co*., 531 S.E.2d 761, 763 (Ga. Ct. App. 2000) ("The effect of reinstatement … is not to make a new policy, but to wipe out the default as if it had never occurred, renewing the policy in all its provisions and vigor in full from the date of lapse or default."). Ms. Cunningham's original policy precluded recovery of the full death benefit if she committed suicide within two years of reinstatement.

On November 8, 2009, Ms. Cunningham completed paperwork to reinstate her policy with Golden Rule. Based on Ms. Cunningham's representations in her reinstatement form, Golden Rule approved Ms. Cunningham's request to have the policy reinstated. Ms. Cunningham paid the required premium of $426.00 to reinstate the policy, and on January 12, 2010, Golden Rule acknowledged that coverage was paid through August 8, 2010.

On February 10, 2010, Ms. Cunningham committed suicide. On February 26, 2010, Plaintiff signed paperwork related to his claim for policy benefits. In the paperwork, Plaintiff confirmed to Golden Rule that his mother's death was by suicide. Moreover, Plaintiff, as personal representative of Ms. Cunningham's estate, submitted additional paperwork on September 2, 2010, confirming the suicide.

On November 23, 2010, in a letter to Plaintiff, Golden Rule denied the death benefit and enclosed a check for $446.66, which was the total of premiums paid by Ms. Cunningham following reinstatement plus six percent interest. Citing the two-year suicide clause, Golden Rule asserted that proceeds under the policy were limited to the premiums paid by Ms. Cunningham following reinstatement, given that she committed suicide within two years of reinstating her policy. [Doc. No. 54-22 at 2].

## DISCUSSION AND ANALYSIS

### A.    Choice of Law

The parties do not dispute the applicable law governing Plaintiff's breach of contract claim. A federal court sitting in diversity "must apply the substantive law of the forum state, including its choice of law provisions." *Devery Implement Co. v. J.I. Case Co.*, 944 F.2d 724, 727 (10th Cir. 1991). Thus, the Court looks to Oklahoma's choice-of-law rules

in determining what law to apply.

Under Oklahoma law, a "contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." OKLA. STAT. tit. 15, § 162. The contract here does not indicate a place of performance. Therefore, the Court must look to the law of the place where the contract was made. "When there is no indication in the contract's text where performance is to occur, the *lex loci contractus* rule – the law of the place where the contract is made – will govern." *Bernal v. Charter County Mut. Ins. Co*., 209 P.3d 309, 315 (Okla. 2009).

Ms. Cunningham disclosed in both her insurance application and her reinstatement paperwork that she resided in Georgia. [Doc. Nos. 54-2 at 2 and 54-6 at 2]. Therefore, Georgia law applies because the contract was made in Georgia.

**B. Plaintiff's Breach of Contract Claim**

Golden Rule maintains it had no obligation to pay Plaintiff anything other than the premiums paid post-reinstatement since Ms. Cunningham committed suicide within two years of reinstating her policy. Plaintiff contends that the policy language does not provide for the suicide clause to reset upon lapse and reinstatement, or alternatively, that the policy language is ambiguous.

An insurance policy is a contract, and its provisions are construed according to the rules governing contract interpretation. *Zurich Am. Ins. Co. v. Beasley*, 666 S.E.2d 83, 85 (Ga. Ct. App. 2008). "Construction and interpretation of a contract are matters of law for the court." *ALEA London Ltd. v. Woodcock*, 649 S.E.2d 740, 744 (Ga. Ct. App. 2007)

(*citing Sewell v. Hull/Storey Dev., LLC*, 526 S.E.2d 878, 880 (Ga. Ct. App. 1999)).

Contract construction involves three steps. *Massih v. Jim Moran & Associates, Inc.*, 542 F. Supp. 2d 1324, 1329 (M.D. Ga. 2008); *Borders v. City of Atlanta*, 779 S.E.2d 279, 285 (Ga. 2015). First, the Court must determine whether the contract language at issue is clear and unambiguous. *Id.* If the contract contains no ambiguity, the Court simply enforces its clear terms. *Id.; see also Sheridan v. Crown Capital Corp.*, 554 S.E.2d 296, 298 (Ga. Ct. App. 2001). However, if the contract is ambiguous, the Court applies the rules of contract construction to resolve the ambiguity. *Massih*, 542 F. Supp. 2d at 1329; *Borders*, 779 S.E.2d at 285; *Sheridan*, 554 S.E.2d at 298. If the ambiguity remains after applying the construction rules, a jury must determine the parties' intent and the contract's meaning. *Id.*

A contract is ambiguous when it "is uncertain of meaning, duplicitous, and indistinct; or when a word or phrase may be fairly understood in more than one way." *Sheridan*, 554 S.E.2d at 298. Contractual provisions are ambiguous when they are "susceptible to more than one meaning, even if each meaning is logical and reasonable." *Auto-Owners Ins. Co. v. Neisler*, 779 S.E.2d 55, 59 (Ga. Ct. App. 2015); *see also Hurst v. Grange Mut. Cas. Co.*, 470 S.E.2d 659, 663 (Ga. 1996) ("[I]f a provision of an insurance contract is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable, it is ambiguous."). "Where the phrasing of an insurance policy is so confusing that an average policyholder cannot make out the boundaries of coverage, there is a genuine ambiguity." *Georgia Baptist Children's Homes & Family Ministries, Inc. v. Essex Ins. Co.*, 427 S.E.2d 798, 800 (Ga. Ct. App. 1993).

Ambiguities are construed strictly against the insurer as the drafter. *Hurst*, 470 S.E.2d at 663; *Neisler*, 779 S.E.2d at 59. In addition, exclusions or exceptions from coverage that the insurer seeks to invoke must be "narrowly and strictly construed against the insurer and [forgivingly] construed in favor of the insured to afford coverage." *Neisler*, 779 S.E.2d at 59 (*quoting Georgia Farm Bureau Mut. Ins. Co. v. Meyers*, 548 S.E.2d 67, 69 (Ga. Ct. App. 2001)). Further, the contract should be read in accordance with the reasonable expectations of the insured. *Neisler*, 779 S.E.2d at 59; *Meyers*, 548 S.E.2d at 69. Finally, the whole contract must be examined in arriving at the construction of any part. *Sheridan*, 554 S.E.2d at 299; Ga. Code Ann. § 13-2-2(4).

*(1)    The Suicide Clause is Clear and Unambiguous*

The Court finds the language of the suicide clause to be clear and unambiguous, providing that the two years begin to run anew from the reinstatement date in the event the policy is reinstated. Although Plaintiff contends that another possible construction is that the last sentence of the provision only applies to the repayment of premiums, that reading is strained.

The first sentence of the clause reads, "If the *insured* takes his or her own life, while sane or insane, within two years of the *policy* date, we will limit the *proceeds* to the amount of premium you paid." [Doc. No. 54-4 at 18] (emphasis in original). The second sentence of the clause reads, "If this *policy* is reinstated, this subsection will be measured from the reinstatement date." *Id.* Absent from Plaintiff's proposed construction is an explanation as to why "this subsection" should be read as only applying to a select portion of the preceding sentence.

There are 13 numbered sections contained in the policy. [Doc. No. 54-4 at 5]. Under each numbered section, there are subsections identified in boldface. The subsection, "If the Insured Takes His or Her Own Life" is on page 14 of the policy under Section 13, "General Terms." [Doc. No. 54-4 at 17-18]. The only logical and reasonable meaning for "subsection" is the entire text under the sub-heading, "If the Insured Takes His or Her Own Life," which is identified in boldface. Plaintiff's construction is simply not plausible.

"The terms and phrases contained in a contract must be given their ordinary meaning." *Unified Gov't of Athens-Clarke County v. McCrary*, 635 S.E.2d 150, 152 (Ga. 2006). "[W]hen the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation … the language used must be afforded its literal meaning and plain ordinary words given their usual significance, and this rule applies equally as well to insurance contracts as to any other contract." *Id.*

In other words, a court may not strain to find an ambiguity, but rather must enforce an unambiguous contract as written. *Thornton v. Georgia Farm Bureau Mut. Ins. Co.*, 695 S.E.2d 642, 646 (Ga. 2010); *see also Smith v. Horace Mann Ins. Co.*, 713 F.2d 674, 676 (11th Cir. 1983) ("Ambiguities will not be inserted, by strained and twisted reasoning, into contracts where no such ambiguities exist."); *Estate of Miller v. Principal Mut. Life Ins. Co.*, 791 F. Supp. 858, 861 (M.D. Fla. 1992) (the court found that the term "commercial aircraft" referred to an aircraft used to transport passengers or property for compensation, and that the phrase could not reasonably and fairly be interpreted to mean something different).

*(2)    Reinstatement Renewed the Original Policy*

Alternatively, Plaintiff argues that the original policy and the reinstated policy are sufficiently different so as to constitute a new policy based on the reinstatement language. The Court is not persuaded.  First, Georgia courts adhere to the rule that reinstatement revives the old policy, and the new policy is merely a continuation of the old coverage. *Mayes* 49 S.E.2d at 126; *Dunn,* 531 S.E.2d at 763.  Reinstatement erases the lapse in coverage as if it never occurred and renews the policy in full.  *Id*.   Ms. Cunningham's original policy unambiguously precluded recovery of the full death benefit if she committed suicide within two years of reinstatement.

Plaintiff contends that the reinstated policy did not notify Ms. Cunningham that the original policy provisions were still in effect nor did it reference the fact that the suicide clause re-set upon reinstatement.  However, Golden Rule did not draft a new policy upon reinstatement nor did Ms. Cunningham sign a new policy.  Rather, Golden Rule sent two letters to Ms. Cunningham.  The November 30, 2009 letter advised Ms. Cunningham that her request to reinstate her coverage was approved, and directed Ms. Cunningham to send a premium payment of $426.00 by December 30, 2009, to "reinstate the policy."  [Doc. No. 54-7].  The November 30 letter also cautioned Ms. Cunningham that if the premium was not received by December 30, "the policy [would] remain in a lapsed status with no insurance coverage."  *Id.*   The second letter dated January 12, 2010, advised Ms. Cunningham that coverage was paid through August 8, 2010.  [Doc. No. 54-8].

Although the two letters did not reference the fact that the suicide clause re-set upon reinstatement, both letters referenced the original policy number (last four digits, 4104).

[Doc. Nos. 54-7, 54-8].  Moreover, the November 30 letter provided specific instructions on how to "reinstate the policy."  The suicide clause in the original policy unambiguously provided that the two-year clock would re-set upon reinstatement.  Reinstatement renews the original policy "in all its provisions and vigor in full from the date of lapse or default." *Dunn*, 531 S.E.2d at 763.  Contrary to Plaintiff's position, there is no ambiguity between the policy and the reinstatement correspondence.  There is only one suicide clause, and it specifically provides that the applicable time period re-sets at reinstatement.

## CONCLUSION

For these reasons, the Court finds that Golden Rule is entitled to summary judgment on Plaintiff's breach of contract claim.  The Court does not address Golden Rule's alternative defense that the subject policy was void because Ms. Cunningham allegedly made material misrepresentations in her reinstatement application.

IT IS THEREFORE ORDERED that Golden Rule's Motion for Summary Judgment [Doc. No. 54] is GRANTED.

IT IS SO ORDERED this  12th day of March 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE